***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner's decision. However, pursuant to its authority under G.S. § 97-85, the Full Commission has modified in part and affirmed in part the Deputy Commissioner's decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-trial Agreement as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff-employee at all relevant times herein.
3. Builders Mutual Insurance Company (through its predecessor, PCA Solutions, Inc.) was the carrier on risk at all relevant times herein.
4. Plaintiff sustained an admittedly compensable injury by accident on 26 September 1995, while in the course and scope of his employment with defendant-employer when he fell injuring his left shoulder.
5. Plaintiff's average weekly wages at the time of his injury by accident will be determined from evidence presented at the hearing.
6. The issues to be determined are as follows:
 a) Whether plaintiff is entitled to receive any additional benefits under the Workers' Compensation Act?
 b) Whether defendants should be sanctioned for fail to comply with the Orders of the Industrial Commission?
 ***********
Based on the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable injury by accident while in the course and scope of his employment with defendant-employer on 26 September 1995. Defendants filed a Form 60 on 6 October 1995. The Form 60 indicated that plaintiff's average weekly wage at the time of his injury by accident was $480.00, yielding a compensation rate of $320.01 per week with compensation beginning on 10 October 1995. Defendants filed a Form 28 dated 10 November 1995, indicating that plaintiff had returned to work on or about 3 November 1995.
2. Thereafter, defendants filed a Form 62 indicating that plaintiff was taken out of work by his treating physician on 21 February 1996. The Form 62 indicated that plaintiff's average weekly wage was $480.00, yielding a compensation rate of $320.01 per week, to begin on 21 February 1996.
3. On 26 February 1996, defendants sent plaintiff a letter in which it was indicated that plaintiff's average weekly wage was not $480.00, but was $244.73 generating a compensation rate of $163.16 per week. Following the letter defendants paid plaintiff compensation at the rate of $163.16 per week.
4. Plaintiff then brought an action in Jackson County Superior Court asking that the outstanding Form 60 of the Industrial Commission be enforced as an Order. On 19 July 1999, the Honorable J. Marlene Hyatt entered a Judgment wherein she ordered payment to plaintiff in the amount of $29,517.88 for the payment of compensation through the week ending Friday 2 July 1999 (this represented the balance of the compensation plaintiff would have received if paid at a compensation rate of $320.01 per week) and ordered defendants to continue to pay plaintiff ongoing compensation, consistent with the Form 60, in the amount of $320.01 weekly until otherwise ordered or approved by the Industrial Commission.
5. Defendants appealed the Superior Court's decision on the average weekly wage to the North Carolina Court of Appeals.
6. During the 18 August 1999 hearing before Deputy Commissioner Glenn, the average weekly wage testimony was held in abeyance by Deputy Commissioner Glenn pending the Court of Appeals decision. Both sides are entitled to a full evidentiary hearing on the average weekly wage issue.
7. On 31 October 2000, George Glenn ordered defendants to pay plaintiff at the $320.01 per week rate (reflecting an average weekly wage of $480.00), in compliance with the Superior Court ruling.
8. On 16 January 2001 the North Carolina Court of Appeals vacated the Superior Court judgment regarding plaintiff's average weekly wage, finding that an average weekly wage reflected on a Form 60 was for "informational purposes only."
9. On or about 10 June 1999, Executive Secretary Tracey H. Weaver entered an Order directing defendants to respond to interrogatories within thirty days from the date of said order. On 29 July 1999, Deputy Commissioner Glenn entered an order directing defendants to comply with Executive Secretary Weaver's 10 June 1999 Order. Defendants failed to comply with either Order. At the hearing before Deputy Commissioner Glenn, defendants contended that the orders were not complied with because, as they asserted, plaintiff was threatening certain witnesses. One of said witnesses, who is an eighty-year-old widow, indicated that she was not afraid of plaintiff and plaintiff had never done or said anything to her that she considered a threat. This witness did indicate that plaintiff had spoken to her while they lived in the same neighborhood. Another witness did testify that she was afraid of plaintiff but that her fear was based upon something his ex-wife had told her, and that plaintiff had never said or done anything to her that was threatening.
10. In this matter all the parties agree that plaintiff sustained a compensable injury by accident on 26 September 1995. Plaintiff was taken out of work from 26 September 1995 through 3 November 1995, when plaintiff returned to work for defendant-employer in his normal position as a carpenter. Plaintiff went back out of work in February 1996. Defendants filed a Form 62 indicating that plaintiff went out of work and they resumed paying plaintiff compensation at the rate of $320.01 per week with plaintiff going out of work on 21 February 1996. The Form 62 is dated 26 February 1996. Thereafter, plaintiff continued out of work while having surgery performed on his left shoulder on or about 14 September 1996, by Dr. Bart Flick. Plaintiff had a second surgery on his left shoulder approximately one year later by Dr. McCollam. Following these surgeries, plaintiff's doctors opined that he would not be able to return to work as a carpenter.
11. Defendants offered testimony at the 14 October and 15 October 1999 hearings before Deputy Commissioner Glenn that plaintiff had been working in the construction industry performing some odd jobs and had earned some wages. At that time, there was insufficient evidence upon which to find that plaintiff was working on a regular basis such that his disability would have ended.
12. At the May 2000 hearings before Deputy Commissioner Glenn, defendants offered evidence indicating that plaintiff was working on a regular basis as a carpenter and that he had helped to build a house in late March and early April 2000. Videos offered by defendants clearly show plaintiff performing all the duties of a carpenter including climbing ladders, climbing stairs, moving ladders from position to position with both hands/arms, carrying lumber in his hands and on both shoulders, bending, lifting with both hands, lifting on a regular basis above his head with both arms, using a measuring tape, kneeling, working on his hands and knees, working above his shoulders and head with both hands/arms on a regular basis, using a circular saw with both hands, hammering with both hands below and above his shoulders, using a drill with both hands, placing logs for a log home they were building above and below his shoulders using both hands. Furthermore, the videos show that plaintiff worked all day and there are no indications that he was having any pain or other difficulties with his left shoulder. The videos show plaintiff doing more work than the other employees on the job.
13. Although plaintiff has offered medical testimony that indicates he is unable to return to work, other evidence shows clearly that plaintiff is no longer disabled and is able to return to his normal job performing his regular task with no restrictions. The evidence offered shows that plaintiff was able to return to work as a carpenter and that he in fact did so return to work as of March 2000.
14. Plaintiff was employed as a carpenter from 13 December 1999 through January 2000, earning wages in the amount of $375.00 per week for this two-week period. Plaintiff operated a boom truck he purchased in 1999 and 2000 and was paid $6,529.00. Since 1996, plaintiff has acted as a general contractor on the construction of four houses, two of which were sold immediately after the completion of construction. There was insufficient evidence upon which to find the exact amount of profit plaintiff earned from the sale of these houses. However, the only reasonable inference from the evidence is that some profit or "income" did continue to flow to plaintiff because he continued to purchase vehicles for his personal and professional use. Plaintiff has been able to obtain loans for either the construction of houses or the purchase of vehicles, and when he made application for the loans he reflected that his income was roughly $2,700.00 per month, at a time when his income from his workers compensation claim was approximately $700.00 per month. Plaintiff did indicate that his wife's income made up the difference.
15. On 15 February 1999, defendants terminated plaintiff's compensation without an order from the Industrial Commission. Then on 17 February 1999, defendants filed a Form 24 application. A Form 24 application essentially asks the Industrial Commission for permission to terminate plaintiff's compensation. On 17 March 1999, a Form 24 hearing was held and it was determined that the question of whether plaintiff's benefits should be terminated should be decided after a hearing before a Deputy Commissioner, and Special Deputy Commissioner Cammarano ordered that defendants reinstate plaintiff's compensation and continue to pay the same until further orders of the Industrial Commission and that they pay a penalty on all late payments. Defendants paid to plaintiff the compensation that he was owed but failed to pay the penalty that had been ordered.
16. Plaintiff and other witnesses testified that they worked for defendant-employer for forty (40) hours per week and were normally paid by the hour. Plaintiff testified that he was paid $12.00 per hour for the time he was employed by defendant-employer, yielding an average weekly wage of $480.00 per week.
17. All the parties were warned and advised at the 18 August 1999 hearing before Deputy Commissioner Glenn that they were to comply with all outstanding orders of the Industrial Commission and if they failed to do so they were subject to penalties and sanctions, both civil and criminal. Thereafter, plaintiff was held in criminal contempt for making threats to Mr. Chambers, shortly after he had testified against plaintiff.
18. As a result of his 26 September 1995 injury by accident, plaintiff was unable to earn wages in his former position with defendant-employer or in any other employment for the periods of 26 September 1995 through 3 November 1995 and from 21 February 1996 through 31 March 2000, except for the limited wages he earned in odd construction jobs.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 26 September 1995, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer. G.S. § 97-2(6).
2. Both sides are entitled to a full evidentiary hearing on the average weekly wage issue. G.S. § 97-2(5).
3. As a result of his 26 September 1995 injury by accident, plaintiff is entitled to be paid, by defendants, temporary total disability compensation for the periods of 26 September 1995 through 3 November 1995 and from 21 February 1996 through 31 March 2000. G.S. § 97-29. Because plaintiff earned some wages prior to 31 March 2000, defendants are entitled to a credit against the temporary total disability compensation awarded herein. G.S. § 97-42.
4. As a result of his 26 September 1995 injury by accident, plaintiff is entitled to have defendants pay for all reasonably related medical expenses incurred or to be incurred as a result of the 26 September 1995 injury by accident. G.S. § 97-25; G.S. § 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the Deputy Commissioner's holding and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation for the periods of 26 September 1995 through 3 November 1995 and from 21 February 1996 through 31 March 2000. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the credit in defendants' favor and the attorney's fee approved herein.
2. Defendants are entitled to a credit against the temporary total disability compensation awarded herein for the limited wages plaintiff earned in odd construction jobs prior to 31 March 2001.
3. Defendants shall pay for all medical expenses incurred by plaintiff as a result of her 26 September 1995 injury by accident.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby awarded to plaintiff's counsel as reasonable attorney's fees, and shall be paid as a part of the cost of this action, and paid to plaintiff's counsel directly by defendants.
5. Defendants shall pay the costs of this action.
 ORDER
IT IS FURTHER ORDERED that this case is remanded for a hearing before a Deputy Commissioner on the limited issues of plaintiff's average weekly wage at the time of plaintiff's compensable injury by accident and plaintiff's resultant weekly compensation rate.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER